PETER NELSON vs. STEPHEN WEEKS & another.

A. B. shipped as seaman on board a vessel, at $25 a month. On discharging him, the owners paid him, at their own election, in gold, and rendered him an account in which they charged him with the premium on gold over United States currency, and he wrote, "Approved, correct and satisfactory. A. B.," at the bottom of the account. *Held*, that the account was not binding on him, but that he might introduce oral evidence of the circumstances of the payment, and, in the absence of proof of an express promise by him to pay the premium, might recover the amount of it from the owners.

CONTRACT against Stephen Weeks and David H. Daniels. The declaration alleged that the defendants were the owners of a brig called The Thames; that the plaintiff shipped on her as a seaman, for a voyage from Boston to Africa, and back to a port of discharge in the United States, at $25 a month; that he served from November 25, 1867, to March 26, 1869, when he was wrongfully discharged at St. Thomas; that he was obliged to make his way home to Boston at great expense; that the defendants owed him nineteen months' wages at $25 a month, amounting to $475, and also $75 expenses of getting home; that the defendants had paid him $253.41; and that there remained due to him $221.59.

At the trial in the Superior Court, before *Rockwell*, J., it appeared that the plaintiff was shipped in Boston on shipping articles by which he was to have $25 a month, and that at St. Thomas, before the brig's contemplated voyage was completed, the voyage was broken up, and most of the crew, including the plaintiff, were discharged.

The plaintiff offered evidence that at St. Thomas he was sent for by the consignees of the vessel, was told that the voyage was to be abandoned and the crew discharged, and was shown an account of his wages, by which there appeared to be due him a balance of $157.66 in gold, and in which he was credited with his wages until the discharge, at $25 a month in United States currency, and was charged, among other things, with thirty-three per cent. premium and also twenty per cent. exchange on the balance due; that he said he wanted to return to Boston in the brig and went away; that he afterwards returned, examined the

account, and said that he thought it was rather hard to charge him twenty per cent. for exchange after deducting the premium on gold, but was told that they did not want him on board ship any more, and he might take the money or leave ; that after some hesitation, as he must have money, he took in gold the amount, $157.66, appearing to be due him by the account, and signed the same as follows : "Approved, correct and satisfactory. Peter Nelson."

The defendants offered evidence that the plaintiff was discharged at his own request and paid off in full in the presence and under the direction of the British consul at St. Thomas, and that afterwards the consul approved the account by affixing his consular seal, and formally discharged the plaintiff. It appeared that the funds from which the plaintiff was paid were placed in St. Thomas by the defendants at an actual cost for exchange of twenty per cent., and that the actual premium on gold was as charged in the account ; and it was admitted that this account was in the usual form adopted for the mutual release provided for by the British Mercantile Shipping Act, except that it was not signed by the master, and there was then no master ; and that a copy of the account was given to the plaintiff as required by said act.

The plaintiff contended that he was not bound by the foregoing receipt, and in any event was entitled to recover for the premium on gold and exchange deducted in making the payment at St. Thomas.

The defendants asked the judge to instruct the jury, " 1st. That if the plaintiff signed the receipt with full knowledge of its purport and effect, and no fraud or deceit of any kind was practised upon him to induce him to sign it, and he then understood and acquiesced in the deductions made from the gross amount of his wages, then he was bound by his receipt, and could not now seek to vary or control it by parol evidence ; 2d. That if the plaintiff was paid in gold reckoned at the actual premium of gold over United States currency, and he then acquiesced in such mode of payment, he could not now avoid it and seek to recover the premium." But the judge declined so to instruct the jury

**and** instructed them " that the receipt might be varied or controlled by parol evidence ; that though the defendants might have paid the plaintiff either in gold or currency at their election, yet, having paid gold, they could not charge him with the premium thereon ; that the plaintiff, if wrongfully discharged at St. Thomas, would be entitled to recover such damage as he had shown upon the evidence he had sustained ; that this could hardly be more than his wages, but might be less, if with reasonable diligence he could get wages on another ship on his way home ; but that he could not recover the $25 a month for the three months after he left the ship, if he fairly settled and agreed to put an end to the contract ; " and he left it to the jury to say whether the plaintiff was entitled to recover anything, and, if anything, how much.

The jury returned a verdict for the plaintiff, for $154.33 ; and the defendants alleged exceptions.

*L. M. Child*, for the defendants.

*S. J. Thomas*, for the plaintiff.

BY THE COURT. The payment made in gold was legally a payment of the amount as cash, and must be estimated as such. *Bush* v. *Baldrey*, 11 Allen, 367.

There was no discharge given by the plaintiff under seal, and a payment upon a liquidated claim of a less sum than the amount due would not discharge the debt, though a receipt was given, expressed to be in full. *Brooks* v. *White*, 2 Met. 283. *Donahue* v. *Woodbury*, 6 Cush. 148. And parol evidence, being generally admissible to control receipts and acknowledgments of consideration, was properly held to be admissible here.

The first instruction prayed for, so far as it was proper, was substantially covered by the words " if he fairly settled and agreed to put an end to the contract" in the instructions given. The second instruction requested was rightly refused. The election to pay in gold having been made by the defendants, and not by the plaintiff, and no evidence being offered that the plaintiff ever expressly agreed to pay the premium, mere acquiescence in the mode of payment would not amount to an accord and satisfaction.

*Exceptions overruled.*