JACOB G. LORING *vs.* GEORGE S. LORING *et als.*

*Contract—conditional, effect of.*

The plaintiff and defendants made a special contract by which the former became master of the latters' ship, and as such earned wages and made certain disbursements. At the same time he contracted with one of the defendants for a portion of his interest in the vessel and from that time received the earnings of such portion, but was to have a bill of sale only when he had paid the price. The vessel was lost before the bill of sale was given. *Held*, that this was a conditional sale only and would not take away the plaintiff's right to maintain a suit at law to recover his wages and disbursements.

As the ship earned freights, the plaintiff from time to time appropriated a part thereof toward the payment of his wages, *Held*, that under his contract he had a legal right to do this, and on such payments, the law in the absence of any agreement to the contrary requires him to account only for the legal value of the coin received, whether foreign or domestic, whatever may have been its market value at home.

Owners of vessels are not liable for wages earned before they became owners. The action is therefore defaulted and to stand for the assessment of damages, which are to be for the amount of wages earned and disbursements made after these defendants became owners, with interest from the date of a demand therefor.

ON REPORT.

ASSUMPSIT. The declaration contained two counts; the first, upon an account annexed by which the ship Reaper and owners were charged with the plaintiff's wages as master from the second day of June, 1866, forty-three months and seven days at a hundred dollars per month, $4,323.33; and for $151.63 disbursed at

Carthagena, and $183.95 at Akyab, on the vessel's account, making a total of $4,658.91 ; and there were thirteen cash items credited, aggregating $2,820.35, being sums retained by the master, in as many foreign ports, towards his wages. Thus the balance was $1,838.56; on which interest after demand was computed, from November, 1868, to March 21, 1871, at $155.04, making the balance as stated to be due in this count nineteen hundred and eighty-five dollars and sixty cents, though it was footed up at $1,989.60, and neither of these sums would seem to be correct, computing the interest at the legal rate for the time indicated. The second count alleged that on the first day of November, 1868, the defendant with two other persons named, since deceased, "being indebted to the plaintiff in the sum of eighteen hundred and thirty-eight dollars and fifty-six cents for labor and services before then performed by the plaintiff as the master of the ship Reaper, for the defendants and said deceased persons, at their request, then and there, in consideration thereof, promised the plaintiff said sum on demand, with interest on the same till paid." The writ was dated March 27, 1871. The general issue was pleaded with a brief statement that the plaintiff and the defendants, with others, were the owners of the vessel at the time the items of the account annexed were made; that these accounts were unadjusted and, with other accounts, were proper subjects of a bill in equity between the several part owners.

The defendants named in the writ were owners in the vessel from February 17, 1865, and some of them before that day. Upon the ninth day of November, 1862, a bargain was made in New York between the ship's husband, George S. Loring, and the plaintiff, that the latter should go master of the vessel at a hundred dollars a month. Nothing was said as to the time or place of payment, nor whether this should be paid in currency or specie. In the account annexed Capt. Loring had given credit for the sums retained by him abroad upon the basis of $4.85 to the pound sterling. At the time the plaintiff took command of the Reaper, George S. Loring agreed to sell him three thirty-seconds of the

vessel for $2500, of which five hundred dollars were paid down, and the rest was remitted from time to time. The agreement was that the bill of sale was to be delivered when the $2500 were fully paid, but the vessel was wrecked at Akyab before the plaintiff came home, so that no bill of sale was ever made, but the plaintiff received from George S. Loring three thirty-seconds of the insurance upon the vessel.

Upon the evidence, the full court was to render such judgment as the legal rights of the parties might require.

*Nathan Webb* for the plaintiff.

After the loss of the Reaper, the master returned home and settled with the ship's husband, to their mutual satisfaction, all the accounts during his command of her, except the single item of his own wages. As to these, he claimed as they were due at each time when he retained moneys on account of them, he should give credit for these sums at the par of exchange only; while the owners contended that he should allow for the premium on gold in this country at the dates of the several credits. This is the main point in controversy between these litigants.

As the wages were due when and where he received these moneys, he was entitled to them in the currency of that time and place at its par of exchange.

In this country, there were two currencies, neither of which had any preference in law over the other. 5 U. S. Stats. at Large, 496; *Thompson* v. *Riggs*, 5 Wallace, 663; *Hussey* v. *Farlow*, 9 Allen, 263; *Bush* v. *Baldrey*, 11 Allen, 367; *Howe* v. *Nickerson*, 14 Allen, 403; *Stanwood* v. *Flagg*, 98 Mass., 124; *Carey* v. *Courtenay*, 103 Mass., 316; *Nelson* v. *Weeks*, 111 Mass., 223; *Frothingham* v. *Morse*, 45 N. H., 545.

Even if the plaintiff were a co-owner, as nothing remained unadjusted, and nothing unpaid except these wages, this action for them can be maintained. *Fanning* v. *Chadwick*, 3 Pick., 420; *Brinley* v. *Kupfer*, 6 Pick., 179; *Dickinson* v. *Granger*, 18 Pick., 315; *Rockwell* v. *Wilder*, 4 Metc., 556.

The promise to pay the master his wages is a special, personal one, and not to be postponed till the owners have all accounts as owners adjusted between them. *Paine* v. *Thacher*, 25 Wend., 450; *Bradford* v. *Kimberly*, 3 Johns. Ch., 431; *Townsend* v. *Goowey*, 19 Wend., 428; *Lewis* v. *Moffit*, 11 Ill., 392.

*Strout & Holmes* for the defendants.

The plaintiff owned three thirty-seconds of the Reaper. Upon a full settlement of all accounts he might be found indebted to them. Had there been such a settlement, recovery in this suit would unsettle it. Hence, it cannot be maintained, but resort must be had to equity. *Sturdivant* v. *Smith*, 29 Maine, 387; *Maguire* v. *Pingree*, 30 Maine, 508; *Hardy* v. *Sprowl*, 33 Maine, 508; *Dodge* v. *Hooper*, 35 Maine, 536.

Though it is true that, as to one not an owner, the master's wages are not ship's account, this is not true where the master is an owner, and the claim is the same as if he had paid out this amount to a third person in behalf of the owners. 35 Maine, 536; *Grant* v. *Poillon*, 20 Howard, 162; *Steamboat Orleans* v. *Phœbus*, 11 Peters, 175; The Larch, 2 Curtis Cir. Ct., 434; *Kellum* v. *Emerson*, Id., 85.

The plaintiff became a part-owner without a bill of sale. *Colson* v. *Bouzey*, 6 Maine, 474; *Pearce* v. *Norton*, 10 Maine, 252; *Lyman* v. *Redman*, 23 Maine, 289; *Badger* v. *Bank of Cumberland*, 26 Maine, 428.

Or, at all events, he was a partner in her business operations; and these wages grew directly out of—or were a part of—this business. Parsons on Partnership, 46, 571; Story on Partnership, §§ 219, 220, 221 and note, 441 and note, 449; 1 Parsons on Shipping & Ad., 93, 116; *Julio* v. *Ingalls*, 1 Allen, 41; *Bulfinch* v. *Winchenbach*, 3 Allen, 161; *Merritt* v. *Walsh*, 32 N. Y., 685.

The credits should have been made equivalent to currency, and not on the basis of $4.85 to the pound sterling. 12 U. S. Stats. at Large, 345; *Hepburn* v. *Griswold*, 8 Wallace, 603; *Trebilcock*, v. *Wilson*, 12 Wallace, 687; *Bronson* v. *Rodes*, 7 Wallace, 229.

DANFORTH, J. This is an action by the master against the owners of the ship Reaper to recover a balance alleged to be due as wages, and for disbursements for said ship.

On the part of the defendants two objections are made to the maintenance of the action.

The first is that the plaintiff, at the time the services were rendered and the disbursements made, was a part owner in the vessel, or at least a partner in the business in which the vessel was used, and that therefore his remedy is in equity alone.

There is nothing in the testimony that tends to show any partnership, but the reverse. The only business done was running the vessel on freight, or for hire, each receiving his own share of the earnings, having no interest whatever in the cargo, or in the profits and losses resulting therefrom. Their relation to each other was therefore the usual one of tenants in common and no question of partnership is involved. Story on Part., § 441.

Was the plaintiff a part owner of the vessel so that he can have no remedy at law under his contract?

His contract was a special one. Under it each owner would be liable, not for his portion only, but jointly for the full amount. A bill in equity would therefore be of no aid to the defendants in settling up the vessel's accounts, or if so it would be liable to deprive the plaintiff of some of his rights; for a judgment against them all jointly in equity would have no advantage over a similar one in law.

But we do not rest the decision of this case upon that ground. The plaintiff was not, as shown by the testimony, legally a part owner as respects his contract for services. There was, as between him and George S. Loring, a contract for the sale and purchase of a part of the vessel. The plaintiff was perhaps legally bound to pay the price agreed upon; for the purpose of receiving the profits, his ownership commenced at the time his services did; he after that time did receive the profits and, as master, had possession. Were this all the testimony upon this point we might fairly infer that he was a part owner, and the law might, certainly in

some respects, impose upon him the liabilities of an owner. But this is not conclusive. This "unexplained is a kind of proof of ownership, which may be highly satisfactory, and is proper for the consideration of a jury upon the question of title. Such evidence is by no means conclusive. It may not always be of so unequivocal a character as to amount to proof of ownership; or it may be qualified or entirely controlled by other evidence." *Badger* v. *Bank of Cumberland*, 26 Maine, 435.

In this case it is modified if not controlled by other testimony. What relates to the sale is found mainly in the letter of the vendor to the vendee of October 31, 1862. He there speaks of having "sold," and the time when the "ownership" commenced, but he also says: "when the note is paid, I am to give you a clear bill of sale," &c. The title then was to remain in the vendor. The sale and ownership were thus qualified and were, in fact, conditional only. If the vendee had failed to perform the condition, the vendor could have rescinded the contract, and retained the title which had never passed from him. He continued, as before, to have the control and direction of that interest, represented it as far as the other owners were concerned, and would as to them be subject to the legal liabilities attached to it.

This contract of sale was therefore a merely private matter between the parties to it, leaving the rights of the plaintiff and defendants in this action unaffected.

In other relations this contract of sale might impose certain liabilities or obligations upon the plaintiff, but none in respect to his contract with the ship's husband by which he became master. It was under that agreement that his services were rendered and the disbursements made and not in any sense as part owner.

The case of *Moore* v. *Curry*, 106 Mass., 409, is very much in point. The facts are similar and the only difference is, that while that is to recover damages for the breach of an unexecuted contract, this is to recover compensation for an executed one.

The disbursements rest upon the same ground as the wages. They were made by the plaintiff, not as owner, but as master and

under the contract with the owners by which he became master a contract, or the remedy under it, which can in no way be influenced by his relation with George S. Loring alone.

It is, however, claimed that the plaintiff has received all, or nearly all that he is entitled to. The amount of his wages and disbursements, is not in dispute. Nor is any question made as to what he has received. But a question is made as to the amount which should be credited for what was received. This difference, which is considerable, grows out of the greater market value of the currency received, than the paper currency of this country by which, as defendants say, they had a legal right to discharge their obligations under their contract with the plaintiff. As to the terms of this contract there is no conflict of testimony, nor are we aware of any difference of opinion as to the law involved in it.

It was made in this country, and is to be construed by the laws of this country. In it we find no provision as to the currency in which the payments were to be made. It necessarily follows, as contended by the defendants, that they had a right to discharge their obligations by a payment in any currency known to the law. Nor do we understand that this right is denied by the plaintiff. No question is made here as to payments to be made, but the question arises upon those which have been made. The credits which the plaintiff has allowed upon his account, are not so many specific quantities of gold, the value of which in currency he is to account for; but they are payments on the amount due him, made in a legal manner and in a currency equally as well known to the law, as that claimed by the defendants. In those credits the full legal value of the coin received has been allowed. This is all that is required. Where the law fixes the amount or value, it cannot be changed or affected by the fluctuations of the market. The defendants might have discharged the whole debt, as they may now discharge the balance due, in legal tender notes. But payments have been made in coin, whether in foreign or domestic is immaterial as long as its value is fixed by our law, and in the absence of any express agreement they are entitled only to the

amount fixed by law.  *Howe* v. *Nickerson*, 14 Allen, 400; *Nelson* v. *Weeks*, 111 Mass., 223;  *Thompson* v. *Riggs*, 5  Wallace, 663. ·

No serious question seems to be made as to the legal right of the plaintiff to appropriate the credits in payment of his debt, as he has done, nor can any such question be successfully made.   In the contract no time was fixed for the payment of the wages; he had therefore, whether at home or abroad, an undoubted right, from time to time, to take from the earnings of the vessel and appropriate to his own payment such sums as might be necessary for that purpose.  *Stanwood* v. *Flagg*, 98 Mass., 124.

He not only had the legal right to do so, but from the testimony it is clear that he did it with the knowledge and consent of the ship's husband.

It is conceded that a portion of the wages sued for were earned before some of the defendants became owners.   For such sum the plaintiff could not recover in this suit.   For the balance with the disbursements and interest from the date of a demand therefor, he would be entitled to recover, and to ascertain this sum a default may be entered and the action to stand for the assessment of damages.                                *Defendants defaulted.*

APPLETON, C. J., WALTON, BARROWS, VIRGIN and PETERS, JJ., concurred.